CHANCERY.

## *Lindley vs. Sharp &c. and Sharp vs. Lindley.*

Case 45.

Error to the Muhlenburg circuit; ALNEY McLEAN, Judge.

*Usury. Mortgages. Parol evidence. Sales.*

May 10.

Allegations of Lindley's bill.

Chief Justice BIBB delivered the Opinion of the Court.

JOHN LINDLEY, by his bill against Sharp, charges, that Sharp loaned him, in the year 1821, the sum of five hundred and thirty dollars; and as security for repayment thereof in a month, he executed to Sharp a deed for two hundred acres of land in Christian county; that very shortly after, at the instance of Sharp, he procured for Sharp a deed from Huling to Sharp, for a tract of land in Todd county, which was done and accepted by Sharp in satisfaction of the sum so borrowed; but as the land in Todd was worth about two thousand

dollars, Sharp agreed that if Lindley would pay the money so borrowed, with twenty-five or thirty-three per cent. advance thereon, in three or four months, the defendant Sharp was to have surrendered the land in Todd; that accordingly, on the 14th Nov. 1821, he executed his note to Sharp for the money loaned, with the advance thereon, amounting to six hundred and fifty dollars; and that it was agreed that if this note was paid in three or four months, the said Sharp was to reconvey to Lindley the land in Todd, which he had caused Huling to convey; if not so paid, Sharp to keep the land in satisfaction of the note; that the complainant was not able to pay the note by the time stipulated; that Sharp by virtue of a judgment and execution upon said note, has caused the property of the complainant to be sold; that Daniel Gray became the purchaser, and gave bond to the sheriff, with Wm. Lindley as security; that Sharp has received from Gray three hundred dollars of the money upon that bond, and issued execution for the residue, and retains the land in Todd, and claims to hold it as his own. To this bill Gray and Wm. Lindley and Sharp are all made defendants, with injunction restraining Sharp from collecting the money yet unpaid on the sale bond. The prayer of the bill is, that Sharp be compelled to repay the money with interest so collected from Gray, and that the balance uncollected on that sale bond be paid over to the complainant, or that Sharp be compelled to surrender and reconvey to the complainant the tract of land in Todd county; or for such general and equitable relief as his case may require.

The history of the transaction, as given by Sharp's answer, is, that in 1821, Lindley's property being under execution upon some liability, from which Azariah Davis felt a deep concern to relieve Lindley, they, Davis and Lindley, applied to him to borrow money for Lindley, to relieve his property from execution. Sharp told them he had the money, but he had provided it with intention to purchase some negroes, and he would not part with it but for such negroes as suited his convenience. Davis agreed, if Sharp would advance to Lindley five hundred and thirty odd dollars, he (Davis) would, in a time then

*Lindley vs. Sharp, &c.*

*Sharp's answer.*

2 G

agreed on, furnish the defendant Sharp with two negro girls, of the size and description of two then owned by A. M. Sharp. To secure the performance of this undertaking by Davis, and to procure the money, Lindley executed to Sharp a deed for two hundred acres of the land he lived on in Christian county, which deed was without any condition expressed in it. After the expiration of the time for Davis' performance, and after several indulgences, and a total failure to deliver the negroes, the defendant, Sharp, supposed he had an indefeasible title to the land conveyed by Lindley, and is advised he could have held it, but he had evinced no disposition to do so. That he was importuned to give up the deed for the two hundred acres in Christian, and take a deed for a tract of two hundred acres on Spring creek in Todd county, to be procured from Huling. Finally, he consented and agreed to an arrangement as follows : Lindley agreed to procure the deed to Sharp from Huling for the tract in Todd, and execute his note to Sharp for six hundred and fifty dollars; Davis agreed that such negroes as were to have been furnished, would then be worth one thousand dollars, as such property had risen in price; and that sum was to be paid to Sharp in consideration of the failure to deliver the negroes; the note of $650 executed by Lindley to Sharp to be in part of the said $1000; said Davis to pay the balance, or on failure, Sharp to hold or sell the land in Todd for the balance; and on his part Sharp agreed to release his title to the land in Christian. This agreement was made in the presence of Sharp, Davis and Lindley, and mutually understood; and accordingly, Lindley executed his note for $650, and procured the deed to Sharp from Huling for the land in Todd. Sharp admits that he had often observed that the fulfilment of this contract was all he desired, and that Lindley might sell the land for that purpose. He states that he had given the patent to Lindley to sell the land to raise the money, and that he would convey to the purchaser; that Lindley had been offered $500 for a part of it. He states that altho' he does intend to give to whomsoever shall be entitled, the benefit of the land or proceeds, after he is satisfied in his contract, yet "he is

advised that the court has no legal or equitable right
to divest him of his vested right to said land; he states
he holds it by an unconditional deed, duly record-
ed, and there was no express or implied understand-
ing at the time or after, that the defendant should
ever release the same; and all that ever was under-
stood between this defendant and complainant, was
the mere voluntary declaration of this defendant,
that although he could hold said land, he has told
the complainant and others, he did not mean to do
so; and it is still the intention of this defendant to
secure himself in the payment of the money afore-
said only. But as all these declarations were in pa-
rol only, and no writing whatever between them in
relation to it, this defendant relies upon the statute
of frauds to protect him against the interposition of
the court to distort his legal right to said land, and
prefers to hold the means, to save himself and do
justice to the complainant, in his own power."—
He states, that at complainant's request, after several
indulgences, he sued at law; "and the complainant
being so well impressed with the justice of this de-
fendant's demand, voluntarily came into court and
entered his consent on record that an execution
should immediately issue on said judgment." He
admits the sale, under execution, and the purchase
by Gray, and receipt of part of the money from
Gray. The answer then denies that he agreed to re-
ceive the deed from Huling in satisfaction of the mo-
ney advanced, and of the deed for the land in Chris-
tian, but repeats it was received upon the contract
and agreement about the negroes, as before set forth.

The defendants, Gray and Wm. Lindley, admit
their sale bond, and say they are willing and ready
to pay to whomsoever the court shall award the
money.

The circuit court dissolved the injunction, with
ten per cent. damages; and permitted the defendant
Sharp to proceed to collect the money on the sale
bond, but decreed that Sharp should convey to Lind-
ley the tract of land in Todd, which the complainant
had caused Huling to convey.

Lindley complains, that the decree did not go far-
ther in relieving him from the usury.

*Margin notes:*

LINDLEY
vs.
SHARP, &c.

Gray and
Wm. Lind-
ley's answer.

Decree of the
circuit court.

Lindley's
complaint a-
gainst the
decree.

LINDLEY
vs.
SHARP, &c.

Sharp's objections.

An advance of money to an applicant for a loan for his obligation to deliver slaves of a certain description in a certain time, worth more than the money, held to be a usurious loan.

Parol evidence is competent to prove a transaction in the form of an absolute sale, was a mortgage to secure a usurious loan.

Sharp complains, that he has been compelled to yield the land.

The answer of Sharp denies the legal deductions of the usurious loan, and reservation of usurious interest, for the forbearance which are drawn from the facts charged in the bill, but gives a more minute detail of all the facts; from which a more oppressive advantage and a more aggravated and exorbitant usury was evidently extorted from the necessities of the complainant than that charged in the bill. The first loan to relieve the complainant from the pressure of an execution upon his estate, was covered by an agreement that Davis, for the money, should furnish two negroes of certain sizes and descriptions; and to secure that contract, an absolute deed was taken from the complainant for the land in Christian. The negroes not having been furnished, Sharp held up his title to the land as absolute. The money was advanced by Sharp to Lindley in 1821—the month does not appear; but on the 14th November in the same year, this advance of five hundred and thirty odd dollars, as the answer says, (the proof says $533,) was swelled by the devices of the contract to pay negroes instead of money, and the absolute deed for the Christian land, and by the rise in the price of such property, into an agreement to pay instead of the negroes, the sum of one thousand dollars. The negro girls might have increased fast, but this money was made to breed much faster.

To secure this sum however, and for redemption of his land so first conveyed by way of security, Lindley is made to execute his note for six hundred and fifty dollars, and to convey the land in Todd, of great value, by an absolute deed; and as Davis has not paid the balance of the sum of $1000, Sharp claims the land in Todd for this balance of $350. It is plain from the statements in the answer, that the money was loaned to Lindley by Sharp, the taking of the agreement for negroes, and the absolute deed for the Christian land, and then taking for redemption of that land and for the negroes, the sum of $1000, part in a note for 650 dollars, the residue in Davis' promise; and to guard against his failure, an absolute deed for the Todd tract, are artifices

and devices too shallow to evade the statute. The defendant however relies upon the statute of frauds "to protect him from the interposition of the court" —"and is advised that the court has no legal or equitable right to divest him of his vested right to the said land"—because his deed is recorded and unconditional, and the transaction rests in parol proof. The defendant has been very badly advised. The cases of Hammond vs. Alexander, 1 Bibb, p. 333, Fenwick vs. Radcliff's.heirs, 6 Monroe, 154, and Grimes vs. Shrieve at this term, 6 Monroe, 546, and the cases therein referred to, render any farther discussion of this case unnecessary. The defendant cannot escape the statute against usury.

This court is of opinion that the facts admitted in the answer do in law amount to flagrant and enormous usury, and show that a very oppressive advantage has been taken of the distresses and necessities of the complainant; and that the decree of the circuit court has not gone far enough to relieve the complainant. This court is farther of opinion, that the order and decree dissolving the injunction with damages before final hearing, ought to be relieved against in its consequences; that an account ought to be taken, by a commissioner to be appointed, of the moneys which have been received by the defendant Sharp on the sale bond given by Gray and his surety, and upon the order and decree dissolving the injunction with damages, and of the balance of principal and .legal interest due said defendant Sharp, from the time of the first advance, after deducting the monies by him received; that due regard be had to the kind and value of the money loaned, of that received, and of that due on the sale bond, the balance due Sharp up to the time of the decree to be made in this cause, ought to. be decreed to said Sharp, to be paid out of the sale bond, and the surplus decreed to the complainant; and that the defendant Sharp be decreed to surrender and reconvey the said tract of land in Todd, which was conveyed to him by Huling, the deed to be with clause of special warranty against himself and his heirs, and all persons claiming or to claim under him; and that said Sharp be decreed to pay the costs at law

Opinion and decree.

LINDLEY
vs.
SHARP, &c.

and in chancery. It is therefore ordered and decreed that the said decree of the circuit court be reversed; and that the case be remanded to that court for further proceedings, according to the principles and directions expressed in the foregoing opinion, and for such orders and decrees as may consist with the said opinion, and the usages of courts of equity.

Sharp to pay the costs of both suits in this court.

*Denny* and *Darby* for Lindley; *Mayes* for Sharp &c.

---

PLEAS IN
THIS COURT.

Case 46.

May 3.

Case stated.